Mr. Roach, are you ready, sir? Good morning. It does seem different than Zoom, doesn't it? Not that we don't pay as much attention to our Zoom cases as to our live cases, but it is nice to see people in person. I'm grateful for you showing up. You may proceed. Thank you. May it please the Court, my name is Lonnie Roach. I'm from Bemis, Roach & Reed in Austin, Texas, and I represent the appellant of Ricky Talamantes in this case, where we must ask the Court to address once again an issue that's recently addressed in the Miller v. Reliance standard. I remember that one. I would imagine so. What happens to claimants under these ERISA plans when the ERISA plan changes insurance companies for providing the coverage? The facts in this case are not in dispute. My client, Mr. Talamantes, worked for the Benton Dickinson Company and worked there for several years and was insured for disability benefits under the Benton Dickinson Disability Plan. His short-term benefits were self-funded by the company and his long-term benefits up until December 31, 2016, were insured by Reliance Standard Life Insurance Company. Mr. Talamantes unfortunately developed a condition called trigeminal neuralgia, which is a very painful condition involving the trigeminal nerve in the space and underwent surgery for that condition in an attempt to decompress the nerve in November 2016. And the thing about this particular surgery, it's a somewhat hit-or-miss procedure. About half the time it works. Sometimes it doesn't, though. And when it doesn't, that's pretty much it. They don't do a repeat decompression of the nerve. And so he had a surgery and thought that it had worked, hoped that it had worked, and he returned to work for BD, Benton Dickinson, on December 23, 2016. Eight days later, his company changed insurance companies for its long-term disability coverage. It dropped its Reliance Standard long-term disability policy and picked up long-term disability coverage with MedLife. Unfortunately for Mr. Talamantes, 11 days later, or 11 days after the change in insurance, his condition returned and he had to leave work again. He had to reassert his short-term disability claim, exhausted his short-term disability benefits, and he filed his long-term disability claim. Eventually, Mr. Talamantes would file his long-term disability claim with both his prior insurer, Reliance Standard, who said MedLife has coverage, and then he filed with MedLife, who said Reliance Standard has coverage. Unfortunately, in this case, there's a significant distinction between Ed and the plan the court interpreted in the Miller case, and that's we have a very clear clause in the MedLife insurance policy. We have special rules, in fact. Special, it's, I've rarely, in this practice, see a clause in an insurance policy so specifically designed for the fact scenario at hand, because the MedLife policy contains special rules for groups previously insured under a plan of disability income insurance. In other words, when the MedLife policy was designed, it anticipated that it would have a group of people. It would have a group of claimants who were previously insured by a different insurance company under the same long-term disability plan, same BD plan, but a different insurance company, and so MedLife was very considerate and included these special rules for what happens during this circumstance, and by my reading of these special rules, they resolve this case, and they resolve it very clearly, very unambiguously. We don't need to determine whether Mr. Talamante was actively at work. He was. That was stipulated, too, but all we have to do is read the terms of the special rules that apply in Mr. Talamante's situation, and we see . . . These are the special rules in the MedLife policy? These are the special, yes, yes. They appear at page 390 and 391. I've got the . . . I'll be honest with you. I know I wrote Miller, and I think it was right. These cases are difficult to me, and they require me. I wasn't an ERISA attorney, so I have to walk very slowly through the policy language so I can understand what's going on. It would help me and maybe the other members of the panel if you just walk us through what clause in the MedLife policy, the special rules you're talking about, and explain why that specific language, I think what you're saying is entitles your client to long-term benefits under that policy. Is that right? I am. I am. That is exactly what I'm saying. The clause, it appears on page 390 of the record, and I'm looking toward the top of the page, and I'll read the clause. Rules when insurance takes effect if you were insured under the prior plan on the day before the replacement date. Okay, and that date was . . . January 1, 2017. January 1, 2017. All right. In other words, if you're insured under the standard policy, that's the referent policy. I know it's not referred to in the policy, but that's a fact. I think it could be the standard policy. I think it could also be interpreted as the short-term plan. The clause simply says the plan. If you were a prior plan that provided benefits, I think either one of them would suffice, but the clause states that if you were actively at work on the day before the replacement date, which of course would have been December 31, 2016, since the replacement date was January 1, 2017, you will become insured for disability income insurance under this certificate on the replacement date, and this certificate, of course, is the MetLife certificate. When I read that clause, it's almost full stop after that because clearly under that provision to me, this tells us that if Mr. Talamantes was actively at work on December 31, 2016, which we stipulated that he was, we stipulated he returned to active work on December 23, 2016, and continued to work until January 11, 2017, and he became insured under MetLife's policy on January 1. Interestingly, if you read the special rules, the special rules would have also continued to cover him if he was not actively at work on the replacement date because he was disabled. Now, if he was not actively at work for some other position, for some other reason, then at that point, we would have to go look at when he became eligible for coverage under the MetLife policy, but we don't have to in this circumstance since he was actively at work on the day before the replacement date, and on the following page, these special rules, it's just a page and a half of the special rules for groups previously insured. On page 391 of the record, there's even a set of clauses for rules for temporary recovery from disability under the prior plan, which of course is exactly what we have had in this situation. Mr. Talamantes was disabled under the prior plan. He experienced a temporary recovery, which lasted from December 23rd, 2016 to January 11th, 2017, and of course, he's had his temporary recovery ended when his condition reappeared, and if we look at the rules for the temporary recovery from disability under the prior plan, the clause states that MetLife will waive the elimination period that would otherwise apply to a disability under this certificate if he received benefits under the prior plan, which he did, at least with regard to the short-term disability plan. Mr. Talamantes received prior benefits. He returned to work as a full-time active employee prior to the replacement date, which he did, that was stipulated too. He became disabled as defined in this certificate after the replacement date, which he did. He became disabled again on January 11th, 2017, and within 90 days of his return to work, which yes, it was three weeks, due to a sickness or accidental injury that is the same as or related to the prior plan's disability, yes, it was trigeminal neuralgia with the same condition, once again stipulated, and are no, in the final two clauses, are no longer entitled to benefit payments under the prior plan's disability since you are no longer insured under the plan, and you would have been entitled to those payments had you remained, had the prior plan remained in place. Is it just the fourth bullet that's the dispute? I'm sorry? Is it just the fourth bullet point that's the dispute? I'm sorry. Maybe I'm speaking too fast. I'm sorry. Is the real crux of the dispute this fourth bullet point on page 391? With regard to the elimination period, with regard to coverage under MetLife's policy, but with regard to whether MetLife must waive a portion of its elimination period for this recurring disability, yes, it is. It's whether he was continuously disabled, and so the real question is whether there was coverage under the standard policy for long-term benefits for this insured, isn't it? In other words, if he can find coverage under the standard policy, then MetLife doesn't cover it. Yes, that's the way, otherwise he could be entitled to benefits from both companies, and we can't have that, and so that's why we have to circle back to the standard policy to determine whether or not he can still receive coverage under the standard policy. Four standards said no. They said it didn't cover him. The standard policy contains a clause that states when your coverage ends, and that it has a general clause. Well, your coverage ends when the plan ends, and we know that was December 31st, 2016, so that's the general clause. The coverage ended when the plan ended on December 31st, 2016. What if you're totally disabled, though, and the company ends the plan? What if the company shuts down, goes bankrupt, goes away? Well, if you're continuously disabled under the standard policy, and under most of these policies, you could continue your coverage while you are continuously disabled. The standard plan, however, also contains a clause that qualifies this continuation of coverage, and it states here are the circumstances, however, when your coverage would not continue, and one of those clauses is, I don't remember the exact page but it's in the brief, is when you become insured under another disability plan by the same employer. So, you could be, a claimant could be continuously covered under standards plan until you become insured under the MetLife plan or whatever replacement plan. If a plan replaces, if a plan replaces the existing coverage, then your coverage ends automatically on that date, and that prevents the duplication or possible duplication of benefits. And so, we really only need to circle back to the standard policy to determine whether or not Mr. Talamantes could continue to receive, or could receive, he never received benefits from standard because he was in the short-term period when the only benefits he ever received were the benefits that he received. So, that's focused on standards policy. It said no long-term benefits will be payable after benefits become payable to you and under any other disability insurance plan under which you become insured during your period of temporary recovery. And we've got an insured here who had a temporary recovery, don't we? Yes. Yes, Your Honor, and he became insured under another plan during his period of temporary recovery. He became insured by MetLife during his period of temporary recovery, which means no more benefits are available to him under the standard plan, which when we circle back then to MetLife's special rules. Just to follow up on Judge Davis's, you're saying that that clause that Judge Davis read, which is 329 of the record, 327, 1 of the two, that's the clause that if it, that's the clause that sort of creates the line of demarcation between long-term benefits under standard and long-term benefits under MetLife. That's the one we have to focus on. Yes. It's entitled the long-term benefits under standard. He doesn't get them under MetLife, right? Yes, that's a clause, that's a clause we need to focus on because that's the clause which prevents the duplication of benefits. Okay. So, you just have to understand how that works. No, no LT, no long-term disability benefits will be payable after benefits become payable to you under any other disability insurance plan under which you become insured during your period of temporary recovery. And you're saying he became insured under the MetLife policy during the temporary recovery period, therefore this doesn't apply. Is that right? Therefore, the clause prevents him from recovering any further, any benefits from standard. That's what I mean. Yes. I'm pointing to the standard policy, but you can't see that. Exactly. Thank you, counsel. You'll have, you'll have time for a vote. Ms. Moore. Ms. Moore, could you just start right there? We're talking about that clause, start at the point where we're talking about that clause where it seems to say that there's no long-term benefits under the standard policy if you become insured under another policy during a temporary recovery, which this is a temporary recovery. It is. This is about that clause. Section B-4, effect of temporary recovery, which is at page 327 in the record. The provisions in standards policy says that it will not pay LTD benefits after benefits become payable to you under any disability policy under which you become insured during your period of temporary recovery. So, standard is relieved of the coverage if and only if benefits become payable under another policy that the claimant becomes insured under. It does not say, and this is important, that standard is relieved of its obligation to pay benefits after the claimant becomes eligible for insurance under another policy. Isn't that a merits question, though? Well, I mean, you know, frequently you have a question of whether somebody's disabled, for example. So, you know, you've got to try that. You've got to try that. So, are you saying that there you'd have to try the question of whether he's disabled before you know which policy covered him? No, not at all. Not at all, because we are looking at when MetLife took over. So, if you look at MetLife's policy, the important difference is particularly clear there as compared to standards policy because under MetLife's policy, which is at 394, which is under recovery from a disability, MetLife's provision states that upon a recovery from a disability, MetLife's temporary recovery provision will not apply if the disability recurs after MetLife's insurance ends and you are eligible for coverage under another group long-term disability plan. Eligible for coverage. That's the word you're pointing to. MetLife never went from become payable to you. It has, yes, and there was nothing that became payable here. And Judge Duncan under, I'm sorry, I didn't mean. How do I know that? Become payable to you under any other disability. An example of where MetLife might have coverage here is the instance where Mr. Talamantes is paid some benefits by standard. Then he had a temporary recovery like he did here. MetLife's coverage comes into place on a temporary basis. And I'd like to point out that in the Miller decision, which is a different issue, but it concerns transfer of insurance. If you look at that provision, it says eligible persons. So this is a critical term and quite frankly is in most policies, but this one is that this gentleman would not be entitled to benefits under the MetLife policy. Well, we don't because, I mean, we do know because he wasn't receiving, he had not received any standards policy. And look at the provisions. Because there are three key provisions in the standard policy. One is the insuring provision. Two is standards policy that says a claimant's right to receive LTD benefits is not affected by termination of the group policy after the Yeah, but that's not talking about temporary recovery. Well, then you go to the temporary recovery provision. And there again, LTD benefits, standard is relieved of paying LTD benefits after benefits become payable under another policy. And so the only way that that happens is if Mr. Telementis has already received benefits standards. Where does that come from? That doesn't come from the standard policy. Well, but it has the foundational provisions that the court, the district court talks about. No, no, I'm talking about the policy now. Where does that come from in the policy? I'm sorry. That he had to receive benefits under the standard policy before he could become eligible under the MetLife policy. That was an instance. Let me, another way this case is different from Miller. Can you answer my question first? Well, the determination under this situation, the determination of disability for LTD benefits stays with standard. Where do you get that? Because under the insuring clause and the provision that says a claimant's right to is not affected by termination of the group policy after the claimant becomes disabled. And he became, under this policy, he became disabled. The date of disability is in November. Not totally disabled. Yes, sir. He became totally disabled in November of 2016 because he was paid benefits under the short term. Right. And so then he came back in December, went back out in January, and then he was paid the maximum amount of short term disability. It seems to me you're jumping from the temporary recovery specific provision back to the general provision. I mean, you know, take an automobile policy. It says we'll cover you if anybody with your consent is driving that automobile. But then it has another clause that says we will not cover any, there's no coverage under this policy if a driver under 21 who is not endorsed on the policy is driving the car. So if you have an 18-year-old driving the car, then that's a provision you go to. And it seems to me we've got to deal with the temporary recovery provision here. We can't, we can't confuse that with the general coverage provision. Well, I think you have to consider all of these and together in order to realize that standard has this, there will be no gap in coverage. Standard has the coverage. I mean, your whole argument is coverage is provided by standard so mental health doesn't have any coverage. Correct. And because the rules that plaintiff relies upon is, he relies upon the special rules for temporary recovery do not even apply here. Judge Oldham, you ask if number four was the one in issue? No. Number five is, I mean, we argue in our brief that four and five were not met. Appellant in his brief really does not argue at all in his brief how they were met. And with regard to the fifth one, would have been entitled to benefit payments with no further elimination period under the prior plan had it remained in force. That's clearly not the case here. It's the stipulated facts that he only had 34 days towards his elimination period at the time that life took over and plaintiff admits, I'm sorry, appellant admits on page 11 that that is the case, that the elimination period was not met. But didn't they pay another 140 or some odd days of short-term disability payment? The employer's short-term disability plan paid 180 days. Why is that not included in the time, in the waiting period? Because we look at the date when MetLife takes over the coverage. Well, so you're saying once MetLife took over, there could not be any additional waiting period that would, that would make, that would, that would key into standard policy? In the situation here, because it says under the standard policy that for standard to be relieved, benefits have to be payable by another plan. Also, I want to point out that plaintiff, Mr. Talamantis, in his brief admits that there would be coverage here by, under the standard policy if there had not been this temporary recovery. So, and he says because it's not continuous. There hasn't been a temporary recovery though. Pardon me? I mean, we're talking about a case where there was a temporary recovery. And that's where we get to the, was he continuously disabled? And yes. Can I ask you a question on that exact point? So I'm looking at the standard policy. I'm on page 327. And under temporary recovery, it says temporary recovery means you cease to be disabled, capital D defined term, for no longer than the applicable allowable period. So during the temporary recovery from December 23rd to January 11th, is he no longer disabled under the standard policy? That's what that Senate says to me. Then you have to go to the provision, which is number five on the next page. It says, except as stated above, the provisions of the group policy will be applied as if there had been no interruption of your disability. And counsel, can I, we can talk about paragraph five. I just want to make sure there's a lot of moving parts. So let's just nail them down. Am I correct that he's no longer disabled under the standard policy in the sentence that we're looking at on 327 starting on January, I'm sorry, December 23rd of 2017, right during the period of the temporary recovery? Is that correct? I don't think so because of number five. Okay. So the answer is no. See paragraph five. Okay. The problem with the line on number five is it says except as stated above. So then you're looking right in the face of number four, which says they have no coverage if there's coverage elsewhere. Well, it doesn't say coverage. It says if benefits are payable. But you want to go back to the allowable period, but why isn't that just a merits question that you try along with disability? In other words, you know, we can't decide that today, whether he's met the allowable period. I mean, you know, one way he would have conceivably met it is he would pay during his time of temporary disability, then the employer pay him another 140 some odd days of short-term benefits. It's not obvious to me why that doesn't, it shouldn't be included in the waiting period. And you can try that down in the district court. I don't see where we have to decide that. If he was eligible for benefits and the court decides that he has met his waiting period, then benefits are payable. And he's disabled. Benefits are payable. I mean, but why isn't that a fair reading of that provision? Because he has to be, there has to be a determined, standard has the coverage and has to determine whether they are payable. And if they're payable, standard has a responsibility. As I said, based on this provision, the way MetLife gets the coverage is if he had received benefits from standard, he has a recovery as he did here. MetLife takes over the coverage and he goes back out on disability. Yes. Here, he's satisfied the short-term disability period. And based on the insuring provision, the provision that says your benefits will not be affected when this plan terminates, and this language about payable, the coverage remains with standard. So it seems to me your whole argument is that if this man became eligible for payment, but a court hadn't determined yet that the benefits were payable, then everything stays with standard. Correct. That's your argument? Yes. That is B-4 of the temporary recovery provision. I'm sorry? B-4 of the temporary recovery provision on page 327 of the record. Correct. That's the language. No LTD benefits will be payable after benefits become payable to you under any other disability insurance plan. Correct. And we are supposed to focus on the words become payable to you. Exactly. And draw a distinction between that phrase and the phrase after you become eligible. Eligible, yes. I mean those are, that is why standard has the coverage. Okay, well I just, I mean what's important to me is just to understand what specific language in the policy is going to govern this dispute. And I think it's important to go through the steps with regard to the insuring provision in the standard policy, the provision at 337 that says a claimant's right to receive LTD benefits is not affected by termination of the group policy, and then look at the standard provision with the word payable. Again, as to his continuous argument that it was continuous, he focuses solely on the word continuous as opposed to looking at the terms of the standard policy, which has the exception as to, uh, as to the exception which says that if you go out on temporary recovery, your disability is continuous. Thank you. Other questions? Thank you, counsel. Mr. Roach, rebuttal. Why don't you pick up where Ms. Moore left off, which as I understood it was, was B4, B4 on page 327 of the standard policy, uh, this clause. That, that seems to be a very important part of, of, um, MetLife's argument. What's your response? Yeah, in what clause can you pick up? B4. The one, the one we've been reading. B, B4. No LTD benefits will be payable after benefits become payable to you under any other disability insurance plan under which you become insured during your period of temporary recovery. The argument on the other side, as I understand it, is that benefits had not become payable, um, to, uh, Talamantes. Well, I think the benefits became payable under the MetLife policy when he became covered under the MetLife policy. There's a, in, uh, I believe it's in the reply brief, uh, I don't often quote from Black's Law Dictionary, but I include the definition of what does it mean to be payable. And it doesn't mean you were paid. It means it's capable of being paid. It could be paid in the future. Is he eligible to receive benefits from MetLife as opposed to from some other entity? When the MetLife policy and the temporary recovery provision said you will be insured for disability under this certificate on January 1st, 2017, I believe benefits became payable under MetLife. Now, he still had that 146 days with a short-term disability that he had to satisfy, which was the elimination period for MetLife. He had to satisfy the elimination period before those benefits would be payable. But they were payable once he satisfied the other criteria. Somebody has to be disabled, too, doesn't he? I mean, they, they could contest his disability. He did what? I'm sorry? If he's not disabled and a court decides he's not disabled, they're not payable either. Well, of course, sir. So, if, if, um, yes. I mean, he must otherwise qualify. He must be, he must. So, I mean, this seems to me to be a strange interpretation to say that somebody has to try their case on disability and waiting period before they know where they're covered here. I agree with, I agree with you, Your Honor. I don't think that is necessary. In fact, Ms. Moore and I agreed that that wasn't, that was why we agreed to bifurcate this trial. We didn't think it was necessary to try the, the merits of the case, whether he, whether Mr. Talamantes is disabled under the terms of the MetLife policy before determining whether MetLife has coverage. Our position is that you can determine whether MetLife has coverage simply by reading the MetLife policy. And, and to the extent you have to circle back to the standard policy, if he's still entitled to any benefits under there, yes, you may have to do that as well. But the MetLife policy has a specific provision exactly for this circumstance, which says that he, Mr. Talamantes, was covered under MetLife certificate on the replacement date, January 1st, 2017. Well, what, just tell me quickly, what is the issue if there is one on whether he's met the waiting period? The only issues remaining with regard to the waiting period is also in the temporary recovery provisions of the MetLife policy. And that would be whether Mr. Talamantes would have to serve a full 180-day waiting period under MetLife's policy or the remaining 146 days that he would have had to serve had standard kept the coverage. That's the only issue with regard to the waiting period, which is, which is even, I don't believe it's in question, but it's, it's even an issue. The, he has to be disabled during the waiting period in order to qualify for the waiting period. Now, he received short-term disability benefits during that time period. And how many days did he receive disability pay? He received a total of 180. He received 34 days for his initial period. And then after, then after he left work again, he received the remaining 146, the balance. So the waiting period under the standard policy was 180? It would have been 180 as well. 190 under the MetLife policy? 180 under both. 180 under both. So you say he met the waiting period? I'm sorry? You say he has qualified, he has met the required waiting period? Yes, he did. He did. That is in the stipulations. He, he exhausted, he exhausted the remaining benefits available under the short-term coverage. And then we look at the temporary recovery provision to see if he has any more time to serve waiting periods under MetLife. Well, thank you, counsel, for both sides. This is, these are always difficult and we'll, we'll pay very close attention to the policy language as we try to decide this. Thank you for your arguments. Case is submitted. We're going to take a 10-minute break and we will be back.